UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VAPROSHIELD, LLC, a Washington limited liability company,<br><br>                    Plaintiff,<br><br>           v.<br><br>ALLAN PROCTOR GROUP, LTD., a foreign corporation,<br><br>                    Defendant. | CASE NO. C12-5763 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant A. Proctor Group, LTD.'s ("APG") motion to dismiss for lack of personal jurisdiction (Dkt. 17). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 13, 2012, Plaintiff VaproShield, LLC ("VaproShield") filed a lawsuit in Pierce County Superior Court for the State of Washington against APG for breach of contract requesting both declaratory and injunctive relief. Dkt. 1-1.

1     On August 24, 2013, APG removed the matter to this Court. Dkt. 1.

2     On April 11, 2013, APG filed a motion to dismiss for lack of personal jurisdiction. Dkt. 17. On April 29, 2013, VaproShield responded. Dkt. 20. On May 3, 2013, APG replied. Dkt. 24.

## II. FACTUAL BACKGROUND

This dispute arises from a letter of intent signed by the parties in September 2009. VaproShield is "an industry leader in breathable, high-performance, weather-resistive barriers and air barrier systems for buildings" headquartered in Gig Harbor, Washington. Dkt. 22, Declaration of Leland Snyder ("Synder Dec."), ¶ 2. APG distributes and manufactures membrane products for the construction industry, and its head office is in Blairgowrie, Scotland. Dkt. 18, Declaration of Paul Roy ("Roy Dec."), ¶¶ 3–4. VaproShield alleges that, for several years, the parties had a business relationship that "included the development of products as well as APG's sale of certain building products to VaproShield for marketing and sale to the general public." Complaint, ¶ 4.

The particular product in question is a self-adhered weather-resistive building membrane ("SA Membrane"). Dkt. 20 at 1. Mr. Snyder declares that the "testing of that product was performed by firms in Seattle and Kent, Washington." Synder Dec., ¶ 3. In September 2009, the parties signed a Letter of Intent. Complaint, Exh. A. The letter stated that the companies would work cooperatively and for their mutual best interest in selling the SA Membrane. *Id*. The agreement states "that VaproShield shall have exclusive rights to sell and market in North America all self-adhesive membranes from APG per the above product description." *Id*. In return, VaproShield was committed to

buy a yearly amount of the product ranging from 1 million square feet in the first year to 3.5 million square feet in the fifth year. *Id.*

After the agreement was entered into, VaproShield alleges that the parties have worked to improve the SA Membrane. Kevin Nolan, VaproShield's technical manager, declares as follows:

> Since 2009, I have assisted A. Proctor Group, Ltd. ("APG") with their testing protocols, investigations of product failure claims, product development, and as APG's agent for obtaining international certifications. With regards to the APG SA membrane, I managed testing, field trials, and material evaluations for APG. I also drafted the installation instructions and helped prepare instructional videos. Lara Proctor, APG's former Business Development Manager for North America, and I communicated almost weekly regarding product testing, instructions, marketing, and development until she left on maternity leave. Since then, I have regularly communicated with her replacement, Jeff Dibdin, on all of these issues.

Dkt. 21, Declaration of Kevin Nolan ("Nolan Dec."), ¶ 3. Mr. Nolan also declares that

> In 2010, [he] coordinated with Architectural Testing, Inc. ("ATI"), a certified testing company located in Kent, Washington, to test APG self-adhered products on a variety of substrate materials (i.e., gypsum, OSB, concrete, etc.). The cost of the testing was split 50/50 between VaproShield and APG.

*Id.*, ¶ 5.

With regard to the parties' dispute, Mr. Synder declares that "APG proposed to another U.S. company−a competitor of VaproShield−that this competitor purchase SA membrane from APG for marketing and sale in North America." Synder Dec., ¶ 8. The record is silent as to where this competitor is located and where APG made contact with the competitor. Mr. Synder also states that "VaproShield brought this lawsuit to enforce the terms of our exclusive agreement with APG." *Id.*

## III. DISCUSSION

**A.      Standard of Review**

As a threshold matter, APG argues that "VaproShield's response attempts to create far more of the relationship between these parties than actually exists." Dkt. 24 at 2. However, when a motion to dismiss is based on "written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1101, 181 L. Ed. 2d 979 (2012) (citing *Brayton Purcell 14 LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Id*. (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)). Based on a review of the submissions and the undisputed facts, the Court declines to hold an evidentiary hearing to resolve the extent of the relationship between the parties. Therefore, VaproShield need only make a prima facie showing to overcome APG's motion to dismiss.

**B.      APG's Motion**

APG moves to dismiss for lack of personal jurisdiction. VaproShield states, and the Court agrees, that "[i]t is undisputed that Washington's long-arm statute applies." Dkt. 20 at 5. VaproShield also confines its prima facie showing to specific personal jurisdiction. *Id*. at 5–10. Therefore, the Court will only address this issue.

To exercise specific personal jurisdiction over a foreign corporation under RCW 4.28.185, the following three-part test must be met:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 767 (1989). The plaintiff has the burden of establishing the first two prongs of the test. *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 863 (9th Cir. 2003). The defendant bears the burden with respect to the third prong. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The mere existence of a contract with a Washington corporation is insufficient to establish personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, are the factors to be evaluated in determining "whether the defendant purposefully established minimum contacts within the forum [state]." *Id*. at 479.

**1. Purposeful Actions**

In this case, viewing the allegations and factual contentions in the light most favorable to VaproShield, the Court finds that VaproShield has sufficiently met its burden on the first prong of the test for specific personal jurisdiction. VaproShield has submitted documents evidencing contact by telephone and email, which favors a finding

of purposeful availment. *See Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund I, LLC*, 155 Wn. App 643, 654–655 (2010). Moreover, VaproShield asserts that the parties worked together to test and improve the SA Membrane by contracting with other Washington companies and splitting the costs. Such cooperation was in each party's mutual best interest and evidences intentional acts to sell the best SA Membrane to customers nationwide, including customers in Washington. VaproShield has also submitted an email correspondence showing that APG's business development manager flew to Seattle to investigate an allegation that VaproShield sold quarantined material to a job site. The Court finds that VaproShield has met its burden to show that this relationship is more than a mere contract to purchase a specific amount of product. Viewed in the light most favorable to VaproShield, the record reflects an ongoing course of dealing such that APG has purposely availed itself of the privilege of conducting activities in Washington.

APG contends that VaproShield's analysis is oversimplified and that VaproShield has provided "exaggerated" red herrings. Dkt. 24. With regard to the red herrings, what APG considers disputed issues are mostly disputed facts. *See, e.g.*, Dkt. 24 at 7 (whether VaproShield "jointly developed" the SA Membrane is a question of fact). With regard to an oversimplified analysis, APG is the party that is compartmentalizing and simplifying the analysis. APG argues that the Court should only consider the exclusive distributor portion of the contract and only analyze APG's contacts regarding establishing that exclusive distributorship. Under this prong, however, the proper test is not confined to acts relevant to specific provisions or terms of the agreement in question. The Court is

directed to analyze the parties' prior negotiations, contemplated future consequences, and actual course of dealing. *Burger King*, 471 U.S. at 479. Therefore, the Court declines to adopt APG's proposed analysis of the issues in question.

With regard to the case that APG heavily relies upon, *CTVC of Hawaii, Co., Ltd. v. Shinawatra*, 82 Wn. App. 699 (1996), the Court finds it easily distinguishable. In *Shinawatra*, the plaintiffs, Washington corporations, were attempting to establish a specific cable television service in Bangkok, Thailand. *Id*. at 701. The plaintiff corporations "sought assistance in dealing with Thai government officials from Dr. Thaksin Shinawatra, a Thai national and former Thai police official . . . [who] allegedly had access to the government authorities that issue licenses to broadcast in Thailand . . . ." *Id*. The court found that plaintiffs

> have identified only two contacts whereby Dr. Shinawatra arguably purposely acted in Washington: (1) the transport of cash supplied by Dr. Shinawatra to purchase equipment for operations in Enumclaw and (2) the Enumclaw bank account opened by Dr. Shinawatra.

*Id*. at 716. The court concluded that plaintiffs had failed to show that either of these contacts gave rise to plaintiffs' claims, which stemmed from the establishment and operation of the cable television service in Thailand. *Id*. at 719–720. *Shinawatra* is distinguishable from the instant case for numerous reasons, including the fact that APG's contacts in Washington are related to the substance of the agreement in question.

Therefore, the Court finds that VaproShield has met its burden under this prong and denies APG's motion on this issue.

ORDER - 7

**2. Arise or Relate**

"The second prong of the specific jurisdiction test asks whether the claim arises out of or results from the Defendants' forum-related activities." *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003). We use a "but for" test to conduct this analysis. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128 (9th Cir. 2003).

In this case, VaproShield has sufficiently met its burden on this prong of the analysis. While it is debatable whether APG's alleged actions regarding the breach of contract claim satisfy this requirement, there can be no dispute that VaproShield's request for a declaratory judgment that the agreement is a valid contract arises out of or results from APG's forum related activities. Therefore, the Court denies APG's motion on this issue.

**3. Reasonableness**

Finally, APG argues that "the application of jurisdiction in this matter is unreasonable." Dkt. 24 at 5. Under this part of the test, the Court must consider

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Mattel*, 354 F.3d at 866–67.

In this case, the Court finds that none of these considerations make the exercise of jurisdiction unreasonable. The contacts and course of dealing discussed above show that

APG purposefully injected itself into Washington to establish one, and possibly the only, nationwide distributor of its products. At this point, the case appears to be a relatively simple and straightforward matter of contract interpretation, which is not a significant burden for APG to defend. Washington has an interest in enforcing its resident's business contracts. Although APG argues that VaproShield would be unable to enforce a judgment from this Court against APG, VaproShield is requesting declaratory and injunctive relief that may be enforced against other distributors in the United States. Finally, APG argues that Scotland is an alternate forum, but APG has failed to show that a judgment from that forum would be as effective as a judgment from this Court. Therefore, the Court finds that APG has failed to meet its burden on the third part of the test and denies APG's motion to dismiss.

## IV. ORDER

Therefore, it is hereby **ORDERED** that APG's motion to dismiss (Dkt. 17) is **DENIED.**

Dated this 20th day of May, 2013.

BENJAMIN H. SETTLE
United States District Judge